## BREWSTER *et al. v.* BOURS *et al.*

| 8 | 501 |
| 78 | 20 |
| 8 | 501 |
| 85 | 287 |

Special issues, framed by the Court according to the established rules of chancery practice, may be tried by a jury in equity cases.

Where G. & Co., concealing their insolvency, obtained an extension from their creditor B., and before the maturity of the notes, B. apprehending that G. & Co. would fail before their paper became due, and that the other creditors of G. & Co. would exhaust their assets by attachment—obtained, by an arrangement with G. & Co., an ante-dated note for the amount due him at the date thereof by G. & Co., on which suit was commenced by attachment, and a levy made upon the property of G. & Co.: *Held,* that B.'s attachment and claim was valid against subsequent attaching-creditors, the case not being one either of actual or constructive fraud.

Giving a promissory note, payable at a future time for a pre-existing debt, does not discharge it. Its only effect is to suspend the right of recovery until the maturity of the note.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This was a proceeding in equity to set aside a judgment on the ground of fraud. The case was tried below by a jury, who

rendered a verdict in favor of the defendants, and this appeal is taken from an order refusing a new trial.

This case is sufficiently stated in the opinion of the Court.

*Hall & Huggins* for Appellants.

The Court below erred in refusing the application of the complainants for a direction by the Court to the jury to find a special verdict presenting the facts established by the evidence.

The allegations of the complaint and the nature of the relief sought, show that this case is addressed exclusively to the chancery powers of the Court. It is nothing more or less than a bill in chancery to set aside a judgment obtained at law, on the ground that the judgment is fraudulent and void as against the complainants.

The latter parties, as well as the defendants, Bours & Co., are all creditors of the defendants, Gillingham & Co. The complainants seek, by the aid of the equity jurisdiction of the Court, to vacate a judgment by default against the common debtors in favor of Bours & Co., for five thousand three hundred and eighty-six dollars, with interest and costs; and also to vacate the note and other proceedings on which the judgment is founded, which judgment and the pretended lien acquired by the suit and proceedings of Bours & Co., as the complainants claim, should be annulled, and the complainants let in to take precedence by virtue of judgments recovered by them, binding the same property.

This Court have decided, in Sedgwick v. Walker, and Cahoon et al. v. Levy et al., 5 Cal. R., that in chancery cases the parties have no right to demand a trial by jury; and even when issues are submitted at the instance of the Chancellor to be determined by a jury, the Court say, in Gray v. Eaton, 5 Cal. R., that he is not bound by their finding, and "in his decree he may be governed by it, or he may disregard it." Cunningham v. Freeborn, 11 Wend. R., 251.

The appellants contend that the judgment in favor of Bours & Co. should be set aside, because the note on which the judgment is founded, as well as the judgment itself, were given and suffered "with intent to hinder, delay, or defraud" the complainants, being at the said several times creditors of the said Gillingham & Co. Act concerning fraudulent conveyances, etc., Compiled Laws, p. 202, § 20.

The facts, as they appear in the record to have been either admitted in the answer, or proved by the evidence, are proof *per se*, of the intent specified in the statute, and in judgment of law render the transaction between Bours & Co., and H. W. Gillingham, of the sixth October, fraudulent and void, as against the complainants.

The Supreme Court of this State, so far from disturbing the

well-known classes at common law of frauds, actual and constructive, have, *ex industria*, adhered to the old rule of their creation, notwithstanding the Legislature of the State would, *prima facie*, seem to have resolved upon its abrogation and the inauguration of a new principle. In Billings *v.* Billings, the Court judicially construes the twenty-third section of the act above quoted, so as to bring its operation into harmony with ancient principles governing this subject. 2 Cal. R., pp. 113, 114; ib., 339.

The Court use, in the case first above quoted, the following language :

"Although the question of fraudulent intent is made a question of fact in all cases under the section above quoted, yet whenever the law declares that certain *indicia* are conclusive evidence of fraud, a verdict against such evidence should in all cases be set aside."

Where such act must necessarily hinder or delay other creditors, the law adjudges the intent to be fraudulent, no matter what the real motive may have been; and in cases occurring under the statute like the twentieth section of our own act, Courts of Chancery have said that the law at once supplies the intent and declares it to be the prohibited and invalidating intent, in the contemplation of the statute. Cunningham *v.* Freeborn, 3 Paige Ch. R., 564; ib., in Court of Error, N. Y., 11 Wend. R., 253 ; Burk *v.* Sherman, 2 Doug., (Mich.) 176.

And this strict doctrine rests for its justification on the common sense rule, that a party must be taken to intend what he knows will be the natural and necessary consequences of his own acts—a rule which, though more frequently found useful in a widely different branch of the law, is nevertheless equally availing in Courts of Chancery in the solution of intricate and important questions there so constantly arising on this peculiar subject of its jurisdiction.

*D. W. Perley* for Respondents.

If the note held by Bours was for a *bona fide* debt, and fairly and honestly made, then there can be no just pretence for disturbing the judgment.

If the note was fraudulently procured by Bours, and with intent to delay, hinder, and defraud the plaintiffs, then the judgment ought to be reversed.

The general question then, is, was that note held by Bours & Co., fraudulently made by Gillingham & Co., and fraudulently procured by Bours & Co. ?

It might be, and perhaps is, a sufficient answer to the question to say that every fact which tends to show or establish fraud, was directly submitted to the jury, under instructions by the Court, and the jury, upon this point, found for the defendants.

The charges of fraud were completely negatived, and the perfect propriety of the instructions, given at the request of defendants, is not questioned.

On principle and authority both, then, the appellants ought not, if the verdict of the jury is to have any consideration at all in this Court, to be allowed to go behind it.

It is manifest that dating the note on the first instead of the sixth neither prejudiced any rights of the plaintiffs, nor operated any advantage to Bours. If the note had been dated on the sixth, Bours could as well have attached on that as on one dated on the first.

The note was evidently dated on the first in order to show the exact state of the demand on that day.

The question now is, did the taking of the two notes on the first, from Gillingham, extinguish the antecedent liability.

If it did not, then the existing indebtedness was a good consideration to support a note made on the sixth, or Bours might have surrendered the old notes and sued on the original cause of action.

The respondents contend that taking the two notes on the first was no payment of the existing debt, and did not extinguish that liability.

The case of Cole *v.* Sackett, 1 Hill, 516, is a case in point Judge Cowen, says:

"It is entirely settled that a promissory note of the debtor in no way affects or impairs the original debt, unless it be paid."

"The creditor may recover on the original consideration, surrendering or canceling the note at the trial."

And the doctrine holds, even where it was expressly agreed that such note was taken in full satisfaction of the original debt.

TERRY, C. J., delivered the opinion of the Court—BURNETT, J., and FIELD, J., concurring.

On the trial, the plaintiffs moved that the jury be instructed to find a special verdict, setting out all the facts in the case as disclosed by the testimony. The Court held, that in cases where a special verdict was desired, the proper practice was to frame issues, stating separately each point in controversy, and directed such issues to be framed and submitted to the jury. Plaintiffs' counsel objected to this mode of proceeding, and declared that they would prefer a general verdict, and no objection being made by the defendants, a general verdict was returned.

The appellants now insist that the ruling of the Court on this point was erroneous, that the special verdict provided for in the Practice Act is as distinct from special issues as from a general verdict. That "it resembles somewhat the taking of depositions in chancery under an order to an examiner, or master,

but differing from these, and commending itself, therefore, to favor in this, that the certified result is not encumbered with the tedious details of every interrogatory, and the exact words of the witness spoken in reply; that the Practice Act meant to obviate the objectionable incidents of the old system, secure the privilege of a jury trial in every case as far as consistent with the rules and practice of Courts of Equity, and whilst it avoided the framing of numerous special issues in certain cases, presented all the information derivable from that proceeding in a form 'much more connected and intelligible."

This point is not well taken. The mode of proceeding contended for by the appellants is, we think, impracticable; that in complicated cases, it would be next to impossible to find a jury capable of passing, understandingly, upon the various questions of fact involved, without the aid of special issues, and that the statute contemplates, that in all such cases, special issues should be framed under the directions of the Court, according to the long-established rules of chancery practice. The case at bar was a proper one for a special verdict; but as the failure to present the issues was the result of plaintiffs' own motion, he cannot be allowed to take advantage of it.

It remains only to inquire whether the allegations of fraud in plaintiffs' complaint are sustained by the evidence.

The record shows that Gillingham & Co., traders in Stockton and San Francisco, were, on the first day of October, 1856, insolvent, but that this fact was known only to themselves; that, at this time, they were indebted to Bours & Co. in the sum of five thousand three hundred and eighty dollars, for money before that time advanced; that Gillingham, concealing the fact of his insolvency, obtained from Bours an extension of the time of payment, and pursuant to this arrangement, executed two notes, one payable on the thirteenth of October, and the other thirty days after date. On the evening of the sixth of October, Bours, knowing that Gillingham & Co. had failed, and apprehending that their property would be attached, and wholly consumed by other creditors, before the maturity of his notes, called on Gillingham, and requested that he would confess judgment for the amount of his debt. To this, Gillingham consented; but at the suggestion of Bours' counsel, in lieu of the confession of judgment, he gave a note payable on demand for the amount which was due Bours on the first day of October; that this note was dated on the first of October, and that on the day it was executed suit was commenced upon it, and attachment was levied on Gillingham's property; that Bours knew at this time that Gillingham & Co. were insolvent, and that his object in taking a note on demand was to enable him, by attachment, to obtain priority over other creditors; that plaintiffs are creditors, having attachments subsequent to Bours',

and that the amount of property attached is not more than sufficient to satisfy Bours' demand.

W.e are not able to perceive any fraud in this transaction. The evidence shows an entire absence of any fraudulent intent on the part of the defendants, and we are clearly of opinion that the facts disclosed by the record do not constitute legal or constructive fraud. The argument that the effect of the proceedings was to hinder and delay other creditors, would apply with equal force to every proceeding by attachment against a debtor, whose assets were not sufficient to discharge all his liabilities.

Bours & Co. sought to recover only the sum which was justly due to them; relying on the representations of Gillingham, and ignorant of his circumstances, they had agreed to give time for the payment of their debt; discoving the true state facts, they took such measures as were thought necessary to restore them to the position which they before occupied; to this end they took a note, on demand, for the precise amount of their antecedent debt, which was a sufficient consideration for the note.

The acceptance of a note payable at a future time for a pre-existing debt, does not extinguish the debt; its only effect is to suspend the creditor's right to recover until the maturity of the note, when he may surrender or cancel the note and proceed on the original consideration. 2 Am. Lead. Cases, 182. See, also, Toby v. Barbic, 5 Johns., 73, where the Court hold, that "it is a rule well settled and repeatedly recognized in this Court, that taking a note, either of the debtor or a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note as payment, and run the risk of its being paid, or unless the creditor parts with the note, or is guilty of some *laches* in not presenting it in due time. He is not obliged to sue on it, he may return it when dishonored, and resort to his original demand. It only postpones the time of payment of the old debt until default is made in the payment of the note."

The rights of the plaintiffs were not, as we conceive, injuriously affected by the execution of the note on demand. Bours' debt was wholly due on the first of October, was not extinguished by the execution of the notes at that time, and his consent to extend the time of payment had been procured by a concealment on the part of Gillingham & Co. of the fact of their insolvency. Under these circumstances, Bours could have surrendered the notes, and proceeded directly upon the original indebtedness.

This view of the case renders it unnecessary to notice in detail the errors assigned by the appellants upon the instructions refused by the Court.

Judgment affirmed.