[No. 4175.]

## SALMON BROWN v. WILLIAM T. OLMSTED.

PRESENTING DRAFT FOR PAYMENT.—Case stated in which the evidence shows sufficient diligence in the presentation of a draft for payment.

PAYMENT OF DEBT WITH BILL OF EXCHANGE.—An express agreement must be shown to establish the fact that a bill of exchange of either the debtor or a third person was taken by the creditor in payment of a pre-existing debt.

ACTION on a promissory note for eight hundred and ninety dollars, given by the defendant to the plaintiff on the 15th of September, 1871, due ninety days after date.  The plaintiff admitted that five hundred dollars was paid on the note January 1, 1872, and claimed that there was a balance of three hundred and ninety dollars due on it.  The note was given at Rohnerville, Humboldt County, where the plaintiff resided.  The defendant resided in the mountains some miles distant.  The plaintiff left the note at Feigenbaum's store at Rohnerville.  Some days after it was due, the defendant called on the plaintiff at Rohnerville.  There was some conversation between them about the plaintiff receiving checks on San Francisco for the amount of the note.  The plaintiff, in his testimony, admitted that he agreed to receive checks payable to Thomas McConnell, of Sacramento, if they were good, and that he was willing to take checks drawn by the firm of Russ, Wood & Co., and he claimed that the defendant was to procure the check, or checks, of that firm.  The defendant then went to Eureka, some miles distant, and purchased a sight draft from Russ, Wood & Co., for five hundred dollars, and one from Shaw,

drawn on Hitchcock, Shaw & Co., for four hundred and twenty dollars, and took them to Feigenbaum's store at Rohnerville, and left them with Levinger, a clerk for Feigenbaum, and told the clerk to take up Brown's note with the drafts. The defendant did not see the plaintiff at this time. The clerk saw the plaintiff a few days after, about December 27, 1871, and told him the checks were there. Brown said the check on Hitchcock, Shaw & Co. should have been on a different party, but he would take it and try it. The clerk then indorsed on the note, "Paid December 27, 1871," and sent it to Olmsted. Brown requested the clerk to send the checks to McConnell, in Sacramento County, in whose favor they were drawn. Four or five days after, the clerk sent the checks, by the stage driver, to Eureka, with orders to leave them in the express office. When the driver arrived at Eureka, which is a seaport, the steamer had left for San Francisco, and he took the letter back to Rohnerville, when the clerk directed him to put the letter in the post-office. The driver did so. The mail was carried by land, and McConnell received the letter about the 6th of February, 1872, and on the 9th of February, 1872, gave the drafts to D. O. Mills & Co., of Sacramento, for collection. McConnell resided nineteen miles from Sacramento, and the roads were heavy, so as to impede travel. There was testimony that the streams were swollen and the roads bad, so that the mail was delayed thereby. In good weather and with good roads, the letter would have reached McConnell in two weeks. The draft of Russ, Wood & Co., for five hundred dollars, was paid; but the draft of Shaw, on Hitchcock, Shaw & Co., was protested for non-payment. The plaintiff admitted, in his testimony, that when he took the checks from the clerk he told him to send the note to Olmsted, but said that he also told him that if the Shaw check was not paid, Olmsted was good for it. Hitchcock, Shaw & Co. suspended payment between the 21st and 23d of January, 1872.

Olmsted, the defendant, testified that he might have paid the plaintiff in coin, but the plaintiff preferred drafts, as he was indebted to McConnell. That when he went to Eureka,

Russ, Wood & Co. would not let him have a check for more than five hundred dollars, and for that reason he bought the second check of Hitchcock, Shaw & Co. He admitted that the plaintiff wanted good drafts, and said Russ, Wood & Co. would suit him. He testified that he arranged with Shaw to pay him for the draft on Hitchcock, Shaw & Co., if the draft should prove satisfactory to Brown; and that he left the drafts with the clerk, and told him that if the drafts suited Brown, to send him his note. That a few days after, he received his note with the indorsement thereon, and that then he paid Shaw three hundred and seventy-five dollars on the draft.

The first instruction to the jury asked by the plaintiff's counsel, was as follows:

"If plaintiff received the draft on Hitchcock, Shaw & Co., and forwarded it with due diligence for collection, and upon due presentation to the drawees it was not paid, and reasonable notice of its non-payment was given to the defendant, then you will find for the plaintiff, unless you further find that plaintiff expressly agreed to accept said draft to the amount thereof in satisfaction and discharge of the note in suit."

The jury found a verdict for the plaintiff, and the defendant appealed from the judgment and from an order denying a new trial.

*Buck & Stafford,* for the Appellant.

If plaintiff failed to collect the check or draft on Hitchcock, Shaw & Co. through want of due diligence in forwarding it for collection, defendant was not liable. (*Brower* v. *Jones,* 3 Johns. 230; 2 Parsons on Notes and Bills, 72; *Dayton* v. *Trull,* 23 Wend. 345.)

Where the facts are ascertained due diligence is a question of law; and in this case plaintiff was bound by law to forward the check by mail on the same or the succeeding day after he received it for presentment and payment.

The first instruction given at the plaintiff's request is erroneous. It tells the jury to find for plaintiff unless they find that plaintiff expressly agreed to accept said draft to

the amount thereof in satisfaction and discharge of the note.

Now, first: It is well settled that an agreement of that kind need not be expressed in words, but may be inferred from circumstances. (*Gibson* v. *Tobbey*, 46 N. Y. 637.)

The jury were thus misled into the belief that the agreement to take the draft in payment must have been expressed in words or it was not binding, and are nowhere informed that an express agreement may be presumed from the conduct of the parties.

*McElrath & Osment*, for the Respondent.

Sight bills or notes payable on demand are to be presented only within a reasonable time. (*Aymer* v. *Beers*, 7 Cowen, 709; *Field* v. *Nickerson*, 13 Mass. 135; Story on Bills, Sec. 231; Edwards's Bills and Notes, 389, 391.)

Seven days have been held a reasonable time. (*Seaver* v. *Lincoln*, 21 Pick. 267.) And five months unreasonable. (1 Cowen, 397.) In *Robinson* v. *Ames* (20 John. 146), a delay of over two months was held not unreasonable.

Accepting a draft for a debt due is no payment unless specially so agreed. (*Welch.* v. *Allington*, 23 Cal. 322; *Griffith* v. *Grogan*, 12 Cal. 217; *Peter* v. *Beverly*, 10 Pet. —; *Sheehy* v. *Mandeville*, 6 Cranch, 253.)

By the Court, NILES, J.:

1. The question whether the draft upon Hitchcock, Shaw & Co. was received by the plaintiff in payment of his note, was submitted to the jury upon substantially conflicting evidence, and will not, therefore, be examined into here.

2. We think the evidence sufficiently shows all the diligence in the presentation of the draft for payment that could be reasonably required under the circumstances of the case.

3. There was no error in giving the first instruction asked by the plaintiff. The decisions of the different States are not uniform upon the question presented by this instruction. But this Court has repeatedly recognized the rule that an express agreement must be shown to establish the fact that a bill or note of either the debtor or a third person

was taken by the creditor in payment of a pre-existing debt. (*Griffith* v. *Grogan,* 12 Cal. 320; *Welch* v. *Allington,* 23 Cal. 322; *Brewster* v. *Bours,* 8 Cal. 506.)

We think it unnecessary to discuss other points made by the appellant. We find no error in the record.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.